IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:07cv257

| | |
|---|---|
| MARVIN EDWARD ELLIS, ) ) Plaintiff, ) ) vs. ) ) MARGARET SPELLINGS, ) Secretary, United States ) Department of Education, ) ) Defendant. ) ) | O R D E R |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss or Transfer [Doc. 4, filed November 26, 2007] and the Plaintiff's timely filed Objection to Memorandum and Recommendation to Dismiss and Transfer [Doc. 11, filed June 30, 2008].

Pursuant to standing orders of designation and 28 U.S.C. §636, the undersigned referred the Defendant's Motion to Dismiss or Transfer [Doc. 4] to the Magistrate Judge. Having conducted a *de novo* review of those portions of the Recommendation to which specific objections were filed, the Recommendation is adopted and the Defendant's motion is granted.

1

28 U.S.C. §636(b); Fed.R.Civ.P. 72.

## STANDARD OF REVIEW

A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), *overruled on other grounds* Douglass v. United Ervs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996). To the extent that a party asserts claims in the objections which were not asserted in support of or in opposition to the motion, *de novo* review is not warranted. Price v. Dixon, 961 F.Supp. 894 (E.D.N.C. 1997)(claims cannot be raised for the first time in objections to a memorandum and recommendation). Likewise, claims which do not point to specific mistakes do not receive *de novo* review. Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether). This Court therefore does not conduct a *de novo* review of those portions of the Memorandum and Recommendation to which non-specific objections have been filed.

## PROCEDURAL HISTORY

The Plaintiff initiated this action on July 23, 2007, but on September 21, 2007, he filed an Amended Complaint. [Docs. 1, 3]. The initial Complaint alleges that the Plaintiff was discriminated against in violation of the Rehabilitation Act of 1973, 29 U.S.C. §791, *et. seq*. [Doc. 1]. The Amended Complaint adds a claim concerning the collection of an overpayment of the Plaintiff's salary which he claims was another discriminatory incident. [Doc. 3].

On November 26, 2007, the Defendant moved to dismiss the action or, alternatively, to transfer it to a proper venue.[1] [Doc. 4]. In his response to the motion, the Plaintiff conceded that the Western District of North Carolina is the wrong venue and sought transfer to the District Court for the District of Columbia. [Doc. 9, filed January 6, 2008, at 4].

On June 20, 2008, the Magistrate Judge entered his Memorandum and Recommendation in which he recommended that the motion to dismiss be deferred to the proper venue and that the action be transferred to the Northern District of California. [Doc. 10]. To that recommendation the Plaintiff objected.

---

[1] The Defendant did not allege that any particular district would be the proper venue.

**DISCUSSION**

**Factual Allegations.**

Until he retired[2] and moved to North Carolina, the Plaintiff was an Equal Opportunity Specialist for the United States Department of Education (the Department) in San Francisco, California. [Doc. 1 at 4]. In May 1997, he entered into a settlement agreement with the Department stemming from his filing of an Equal Employment Opportunity (EEO) complaint because he was not reasonably accommodated for his disabilities of obstructive sleep apnea (OSA) and depression. [Id., at 4-5]. The Plaintiff filed the complaint because the Department's requirement that he travel to remote locations did not accommodate his need for medical equipment and backup equipment for his portable respirator. [Id.]. As part of the settlement, the Department agreed to eliminate the requirement for overnight travel. [Id.].

In 1998, the Plaintiff was elected as President of the American Federation of Government Employees, Local 3899, in San Francisco.[3] [Id., at 6]. In this position, he represented approximately 200 Department

---

[2] The Plaintiff took voluntary retirement effective November 2005. [Doc. 9-7, filed January 6, 2008].

[3] There is no allegation that this position was anything other than voluntary on the Plaintiff's part.

4

employees in California and was required to travel, including travel to Washington, D.C. [Id.]. The Plaintiff alleges that he requested accommodations in the form of travel, at government expense, to locations which had medical backup for his respirator and that he be allowed to work at home. [Id.]. The Plaintiff claims that his requests for accommodation were denied with the result that he was unable to attend the August 2000 Department-sponsored labor-management partnership meeting in Washington, D.C. [Id., at 7]. As a result, the Plaintiff filed a second EEO complaint in August 2000. [Id.]. It is alleged that in November 2003, the investigation of the complaint resulted in a decision adverse to the Department. [Id.].

In August 2003, the Plaintiff was elected President of the American Federation of Employees [sic] (AFGE) National Council 252, and in that position was the exclusive representative for 3,500 bargaining unit employees in the Department.[4] [Id., at 8]. According to the Plaintiff, this is a full-time position and since the office for the President was located in Washington, D.C., he was obligated to travel there. [Id.]. In addition, the Plaintiff claims that the Department was required to pay for his travel and

---

[4] The Plaintiff alleges that prior to the election, the Department disseminated information about his requests for accommodation to the union members. [Id., at 10]. Despite this, he was elected. [Id.].

expenses as the union president as well as to pay for his office space and equipment. [Id.].

The Plaintiff alleges that he was denied those accommodations from May 2003 through April 2004.[5] [Id.]. Because the Plaintiff was not present in Washington, D.C. during this time period, the Union called for a new election. [Id.]. The Plaintiff alleges that the Defendant improperly and inappropriately disseminated his medical records in order to influence the election. [Id.]. In May 2004, a new election for union president was held and the Plaintiff was removed from his position. [Id., at 9].

Prior to that election, however, the Defendant asked for certain medical records which would document the Plaintiff's inability to travel to Washington, D.C., including records related to sleep apnea and any diagnosis of a mental condition.[6] [Id., at 9-10]. Although the Plaintiff provided medical documentation concerning his sleep apnea[7], he refused

---

[5] Although the allegation is that he was denied accommodation beginning in May 2003, the Plaintiff did not become president until August 2003.

[6] The Plaintiff alleges in his Complaint that this request was made in April 2004. [Doc. 1 at 9]. Another document submitted by the Plaintiff in opposition to the motion, however, contains an allegation by the Plaintiff that the request was actually made in August 2003, right after his election. [Doc. 9-4, filed January 6, 2008].

[7] In the undated documentation, the Plaintiff's physician advised that the condition of OSA required use of a nasal continuous positive airway pressure pump which is portable. [Doc. 9-4]. "Regarding overnight travel, Mr. Ellis may travel overnight with some precautions. I do not recommend that Mr. Ellis travel frequently, or for short

6

to comply with the second request because he had not requested an accommodation based on mental condition.[8] [Id.].

After his losing the second election for union president, the Plaintiff continued with his employment in San Francisco where the Defendant, he alleges, refused to allow him to work from home. [Id., at 10]. Although the Plaintiff alleges that this treatment forced him to retire, his retirement documentation shows that he requested voluntary retirement because he "want[ed] to retire." [Doc. 9-7].

In September 2004, the Plaintiff filed his third EEO complaint alleging that he was subjected to a hostile work environment when he was required to provide a medical release and mental diagnosis in order for his request for accommodation to be considered. [Doc. 9-2, filed January 6, 2008]. He also alleged that the refusal to consider the request resulted in his removal from position as president. [Id.].

In April 2007, he received his right to sue letter from the Equal Employment Opportunity Commission (EEOC), Office of Federal

---

overnight trips." [Id.]. He further recommended that travel occur only with the assistance of family or friends or co-workers and that the Plaintiff be allowed to work from home once or twice per week due to degenerative joint disease, not because of OSA. [Id.]. The medical opinion, which dictates against travel rather than in favor thereof, was provided by a physician located in San Francisco. [Id.].

[8] The previous settlement agreement, however, involved the Plaintiff's request for accommodation of his condition for depression.

7

Operations (OFO). [Id.]. In that letter, the following findings were made:

> [D]ue to complainant's life-threatening medical conditions, [the Department] requested medical and psychiatric evidence from complainant pursuant to a prior settlement agreement that prevented [the Department] from requiring overnight travel for completion of work assignments. With regard to complainant's removal from the office of President, the agency noted, among other things, that there was a rerun for the position due to decisions made and actions taken during complainant's tenure that raised concerns among his fellow union leaders.
>
> ...
>
> [T]he [Plaintiff's] Supervisory Human Resources Specialist (HR1) knew that [the Plaintiff's previous] settlement agreement between complainant and the agency prevented OCR [Office of Civil Rights] from requiring overnight travel for completion of work assignments due to life-threatening medical conditions. Consequently, after it became apparent that complainant's government-paid travel request to conduct union business in Washington, D.C., would involve overnight travel, HR1 was obliged to secure medical and psychiatric evidence that clearly support an improvement of complainant's condition. The record contains no evidence, other than complainant's assertion, that the proffered reason for requesting the multi-axis psychiatric diagnosis was a pretext for disability discrimination.
>
> ...
>
> Here, due to complainant's documented condition which prevented overnight travel, we find that the agency had a reasonable belief, based on objective evidence that complainant's ability to perform the essential job functions was impaired by a medical condition. Based on the foregoing, the Commission discerns no improper disability-related inquiry in this case.

[Id., at 2-4].

The Plaintiff subsequently initiated this action.

8

**Plaintiff's Objections.**

The Plaintiff's first objection is to what the Plaintiff alleges to be the Magistrate Judge's alleged finding of lack of service or improper service upon the Defendant. The Magistrate Judge, however, ruled that "Inasmuch as venue is a threshold issue, the undersigned makes no recommendation on the government's motion to dismiss for insufficient service of process[.]" [Doc. 10 at 11]. The Court therefore rejects this objection because it is an objection to something that simply is not present in the Recommendation. The Magistrate Judge intentionally did not reach the issue of proper service.

Next, the Plaintiff objects to the recommendation that the case be transferred to the Northern District of California, claiming that the proper venue is the District of Columbia. "Given facts regarding location of the Plaintiff's employment and retirement it is clear that all of the alleged infractions of law took place in Washington, D.C. The Plaintiff's primary concern is accessibility to the judicial process[.]" [Doc. 11 at 5].

Claims brought pursuant to the Rehabilitation Act are subject to the venue provisions of Title VII, 42 U.S.C. §2000e-5(f)(3). 29 U.S.C. §794a(a)(1); Dehaemers v. Wynne, 522 F.Supp.2d 240, 247 (D.D.C. 2007); Benton v. England, 222 F.Supp.2d 728, 731 n.3 (D.Md. 2002). That statute

provides that such an action may be brought (1) in any judicial district in which the unlawful employment practice is alleged to have been committed; (2) in the district in which the employment records relevant to such practice are maintained and administered; or (3) in the district in which the aggrieved person would have worked but for the alleged unlawful employment practice.  42 U.S.C. §2000e-5(f)(3).

The Magistrate Judge concluded that proper venue as defined in the first two categories set out above point solely to the Northern District of California.  The Plaintiff, however, objects to the Magistrate Judge's conclusion that the alleged infractions occurred in California instead of Washington, D.C.  [Doc. 11 at 5].  Since he would have worked in Washington, D.C. but for the discriminatory conduct, that is the correct venue, he argues. [Id.].  In fact, the Plaintiff claims that upon his election in August 2003 as union president, he was no longer employed in San Francisco.  [Id.].  The Plaintiff also refers to six individuals whom he identifies as fact witnesses, five of whom are employed in Washington, D.C. [Id., at 6].  He also alleges that the office of president was a full-time job, national in scope, requiring his presence in Washington, D.C. [Id.].  Finally, he argues that transfer of the case to California would be a hardship for both him and the Defendant. [Id.].

The undersigned looks to the allegations of the complaint which the Court treats as true for the purposes of determining venue. <u>AC Controls Co., Inc. v. Pomeroy Computer Resources</u>, 284 F.Supp.2d 357 (W.D.N.C. 2003); <u>Heft v. AAI Corp.</u>, 355 F.Supp.2d 757, 762 (M.D.Pa. 2005).

The Plaintiff's Complaint includes allegations concerning his prior settlement agreement with the Department, including the fact that as part of that settlement, the Department was to eliminate any requirement that the Plaintiff have overnight travel. The facts and circumstances surrounding this settlement occurred in San Francisco where the Plaintiff was employed.

When the Plaintiff later requested overnight travel accommodations in connection with his position as union president, the Department was obligated to act in accordance with the settlement agreement. It requested medical confirmation to ascertain if the Plaintiff's condition would now allow overnight travel. Again, this occurred in San Francisco. <u>Harley v. Chao</u>, 503 F.Supp.2d 763, 773 (M.D.N.C. 2007). While the Plaintiff refused to provide medical documentation concerning his mental health, the medical documentation concerning his sleep apnea was provided by a physician located in San Francisco.

The Plaintiff also alleges that the Department disseminated information in San Francisco about his medical condition to union members

11

in an unsuccessful attempt to defeat his election. Although he claims that once elected as union president, he then had a full-time job in Washington, D.C., he also claims that he could not travel because the Department refused his request for accommodation. As such, the Court must conclude that he never worked in Washington.

Finally, he admits that when he was replaced as president, he continued his employment in San Francisco where he alleges the Department persisted in its discriminatory conduct.

The Plaintiff's own allegations make clear that any unlawful employment actions he alleges occurred in San Francisco. Hayes v. RCA Serv. Co., 546 F.Supp. 661, 663 (D.D.C. 1982) ("[T]he Court must look to the place where the decisions and actions concerning the employment practices occurred."). The fact that individuals in management positions in Washington, D.C. may have investigated the Plaintiff's complaints does not remove the discriminatory conduct from California. Ifill v. Potter, 2006 WL 3349549 **2 n.3 (D.D.C. 2006). The Court therefore concludes that the Magistrate Judge was correct in his assessment that the only proper venue under the first category pursuant to 42 U.S.C. §2000 e-5(f)(3) is the Northern District of California.

As to the second category under 42 U.S.C. §2000 e-5(f)(3), the

12

Plaintiff does not dispute that his employment records relating to these allegedly unlawful acts are located in San Francisco where he worked and the conduct of which he complains occurred in San Francisco. Harley, 503 F.Supp.2d 763; Archuleta v. Sullivan, 1991 WL 179071 **3 (4th Cir. 1991) ("[V]enue is determined by the place of the allegedly discriminatory conduct, the place of employment and the place where records are kept[.]"); Soul v. Movado Retail Group, Inc., 2007 WL 119296 **3 (M.D.Pa. 2007) (Congress[] inten[ded] to limit venue in Title VII cases to the jurisdiction in which the alleged discrimination occurred."). Plaintiff did not object to this conclusion. As such, for this additional reason the Northern District of California is a proper venue.

     The Plaintiff argues that he would have worked in Washington, D.C. but for the discriminatory conduct. Based on this the Plaintiff argues that the third category under §200e-5(f)(3) dictates that the District of the District of Columbia is a proper venue. The third prong of §2000e-5(f)(3), however, is triggered only if the defendant cannot be found in a proper district under the first two provisions. Ifill, 2006 WL 3349549. Moreover, "[a]ccording to the plain language of §2000e-5(f)(3), the only time venue is proper in *any district* in a particular state is if it is the state where the unlawful acts allegedly occurred." Harley, 503 F.Supp.2d at 774. As noted *infra*, the

unlawful acts are alleged to have occurred in California.  Accord, <u>Tamashiro v. Harvey</u>, 487 F.Supp.2d 1162 (D. Hawaii 2006) (even though position sought was in Alaska, effect of denial was felt in Hawaii where employee was residing).  Moreover, even if the Northern District of California and the District of the District of Columbia were both proper venues for this matter, Plaintiff could have secured his selection between them by filing this action in the District of the District of Columbia.  Plaintiff, however, chose not to do so, and filed in what all agree is an improper venue.  As such, Plaintiff has little basis to complain about the Magistrate Judge's recommendation to transfer this matter to a different District that clearly is a proper venue, namely the Northern District of California.

Having addressed each of the objections raised by the Plaintiff, the Court overrules all of Plaintiff's objections and will adopt the recommendation.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss or Transfer [Doc. 4] is hereby **GRANTED IN PART AND DENIED IN PART**.  This action is hereby **TRANSFERRED** to the United States District Court for the Northern District of California.  The Defendant's Motion

14

to Dismiss is **DENIED without prejudice** to refiling in the transferee venue.

Signed: August 21, 2008

Martin Reidinger
United States District Judge